# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAMANTHA ISOLINA YOUNES, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:14-170 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION

Samantha Isolina Younes ("Younes") seeks review of an adverse decision on her applications for child's and disability insurance benefits and supplemental security income available under the Social Security Act.[1] *See* 42 U.S.C. § 402(d), 423(d)(1)(A), 1382c(a)(3).

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the

---

[1] Supplemental Security Income, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provides an additional resource to assure that disabled individuals' incomes do not fall below the poverty line. *See* Social Security Administration, Social Security Handbook, § 2100 (14th ed. 2001). Supplemental Security Income is available to persons of all ages.

Disability Insurance, authorized by Title II of the Social Security Act and funded by social security taxes, provides income to insured individuals forced into involuntary, premature retirement by reason of disability. *See* 42 U.S.C. § 423(a); *see also Mathews v. Castro*, 429 U.S. 181, 186 (1976).

A disabled, unmarried child under the age of 22 is entitled to child's insurance benefits (generally higher than Supplemental Security Income) based on the earnings record of an insured parent who is entitled to old-age or disability benefits or who has died. 20 C.F.R. § 404.350(a); *see also* 402(d)(1)(G). ALJ Grabeel's decision indicates that the insured wage earner in this case was "Ronald P. Yones." (T. 12).

decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).

Congress further directs reviewing courts to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II.  Background

*A.  Personal*

Younes, born in 1990, attended regular education classes, but dropped out of school in the eleventh grade. (T. 30, 37, 117). She subsequently obtained a GED certificate.[2] (T. 30, 37).

---

[2]      General Educational Development ("GED") tests are a group of subject tests which, when passed, certify that the test taker has high school-level academic skills. Generally, States award a Certificate of High School Equivalency or similarly titled credential to persons who meet the passing score requirements.

Younes's longest term of employment was for about eight months as a cashier. She stopped working in 2010 after being fired for excessive absenteeism. (T. 30, 161-62). She has not worked since 2010. (T. 161).

Younes smokes cigarettes, and uses "1 bowl pack" of marijuana once a week. (T. 502). During the period between 2005 and 2008, she was arrested on various minor criminal charges including criminal trespassing, petty larceny, and possession of a forged instrument. (*Id*.) She performed community service. (*Id*.). Her last arrest was for domestic harassment, and those charges were dropped. (*Id*.).

B.    *Claims*

In 2010, when Younes was twenty years old, she applied for child's insurance benefits; thereafter, in 2011, she also applied for disability insurance benefits and supplemental security income, claiming that she became unable to work as of November 1, 2007, due to anxiety, depression and irritable bowel syndrome ("IBS"). (T. 161). After early administrative denials, she requested an evidentiary hearing, and her claim was assigned to administrative law judge, Thomas Grabeel ("ALJ Grabeel").

ALJ Grabeel conducted an evidentiary hearing in October, 2012. (T. 25-41). Younes, represented by legal counsel, attended and testified. (*Id*.). The remaining sources of evidence included medical records, educational records, and medical consultant reports (both examining and nonexamining).

ALJ Grabeel denied Younes's applications in a written decision dated December 6, 2012. (T. 12-20). The Appeals Council denied Younes's request for review. (T. 1-6). Younes then instituted this proceeding.

# III.   Commissioner's Decision[3]

Initially, ALJ Grabeel found that Younes met the insured status requirements of the Social Security Act through June 30, 2012, and that she did not engage in "substantial gainful activity"[4] after her alleged onset of disability (even though she worked briefly).  Next, ALJ Grabeel found that Younes has severe impairments consisting of irritable bowel syndrome, depression, and anxiety.  (T. 15).  Third, ALJ Grabeel found that Younes's impairments, singly or in combination, are not so extreme in degree as to be presumptively disabling under the Commissioner's listings of presumptively-disabling mental and physical impairments.[5]  (T. 15).

---

[3]    ALJ Grabeel utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).  A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

Generally, administrative law judges use a different and abbreviated three-step sequential analysis to determine whether children are eligible for disability-based benefits on the basis of a disability.  20 C.F.R. § 416.924(a). The five-step adult standard was required here, however, because Younes applied for child's insurance benefits after attaining age 18.  *See* 20 C.F.R. § 416.924(f); *see also* 20 C.F.R. § 404.350(a)(5).

[4]    "Substantial gainful activity" or "SGA" is "work that involves doing significant and productive physical or mental duties" done for pay or profit, and may include part-time work even if it includes less responsibility or pay than work previously performed.  20 C.F.R. §§ 404.1510(a)(b), 404.1572, 416.910(a)(b), 416.972.  Generally, when earnings from employment exceed a certain threshold amount specified in the Commissioner's regulations, it is presumed that she has demonstrated the capacity to engage in substantial gainful activity.  *See* 20 C.F.R. §§ 404.1574, 416.974.

[5]    The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  Listed impairments are presumptively disabling.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

ALJ Grabeel then made a predicate finding of "residual functional capacity."[6] He found that Younes remains physically capable of performing a full range of work at all exertional levels, but her mental impairments create nonexertional limitations that restrict her to performing only "simple unskilled work." [7] (T. 16).

ALJ Grabeel found that Younes has no past relevant work history to contrast with her current residual functional capacity. (T. 19). Hence, ALJ Grabeel proceeded to the final step of sequential evaluation (Step 5) to determine whether there is available work that a person with Younes's residual functional capacity can perform. As an evidentiary basis for that finding, ALJ Grabeel consulted Medical–Vocational Guidelines, commonly referred to as "the grids."[8] (T. 19). He concluded that a finding of "not disabled" was appropriate under the

---

[6] "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *2 (July 2, 1996). Regarding mental impairments, an administrative law judge must take into consideration limitations on a claimant's "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting ...." *See* 20 C.F.R. §§ 404.1545(c), 416.945(c).

[7] ALJ Grabeel's complete "residual functional capacity" finding was:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant is able to meet all the mental demands of simple unskilled work including understanding, remembering, and carrying out simple but not complex instructions; make decisions on simple work related issues, maintain attention and concentration required to perform simple tasks; interact appropriately with coworkers, supervisors, and the public; adapt to ordinary workplace changes; and maintain a work schedule within customary tolerances with access to a restroom.

(T. 16).

[8] The Medical Vocational Guidelines ("grids") are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

framework of Rule 204.00. (T. 19). Thus, Younes's application was denied. (T. 19-20).

## IV. Points of Alleged Error

Younes's brief proffers two "issues" recorded *verbatim* in the note below.[9] As argued, however, Younes identifies three alleged errors restated in logical analytical sequence as follows:

1.  ALJ Grabeel erred in failing to consider Younes's obesity when determining severity of her impairments and residual functional capacity;

2.  ALJ Grabeel failed to follow the "treating physician rule;" and

3.  ALJ Grabeel failed to afford proper weight to opinions of a consultative examining physician.

## V. Obesity (Restated Point 1)

If ALJ Grabeel erred in wholly failing to consider obesity, it is likely that none of his subsequent findings could be deemed as supported by substantial evidence. Consequently, this alleged error is examined first.

*A.  Evidence*

In November, 2008, Younes underwent a physical examination by her treating source, Louis Ianniello, M.D. Dr. Ianniello's treatment note recorded that Younes was a morbidly obese female weighing 258 pounds. (T. 646). Three years later, in November 2011, Younes submitted to another physical

---

[9]  1.  Did the Administrative Law Judge fail[] to follow the treating physician rule and further, did the Administrative Law Judge commit reversible error by failing to afford proper weight to the consultative examiner, thus preventing meaningful review?; and,

2.  Did the Administrative Law Judge commit reversible error by failing to consider the claimant's obesity at Step Two and further in determining the claimant's RFC as required by SSR 02-1p?

(Dkt. No. 12, p. 1).

examination by a consulting physician, Kautilya Puri, M.D.  At that time, Dr. Puri recorded Younes's height as 5'4" and her weight at 204 pounds.  (T. 507). Dr. Puri also observed Younes to be "obese."  (*Id*.).

## B.  *Governing Legal Principles*

Obesity in and of itself is not a disability within the meaning of the Social Security Act.  Administrative law judges, nonetheless, must consider whether obesity in combination with other impairments prevents claimants from working.  *See* SSR 02-1p: Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57,859, 57,860 (Sept. 12, 2002); *see also Dutcher v. Colvin*, No. 1:12–cv–1662 (GLS), 2014 WL 295776, at *6 (N.D.N.Y. Jan. 27, 2014) ("while obesity is not in and of itself a disability, it is a medically determinable impairment under the regulations, which the ALJ should consider when assessing an individual's RFC").

SSR 02-1p notes that obesity can cause functional limitation, and that functions likely to be limited depend on many factors, including where excess weight is carried, whether it causes sleep apnea/fatigue, whether it impacts social functioning, and any potential problems with ability to sustain work activity.[10]  It further instructs that obesity should be evaluated at various stages of sequential evaluation including whether:

- The individual has a medically determinable impairment.
- The individual's impairment(s) is severe.
- The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings.

---

[10]     SSR 02-1p recognizes three levels of "obesity," based on Body Mass Index ("BMI"), which is a ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m 2).  *See* 67 Fed. Reg. at 57,860. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. *Id.*

- The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy.

SSR 02-1p, 67 Fed. Reg. at 57,861.

## C.   *Younes's Challenge*

ALJ Grabeel's decision does not mention Younes's obesity at any sequential-evaluation step. His residual functional capacity finding contains no obesity-related limitations (*e.g.*, nonexertional postural limitations relating to climbing, bending, stooping, etc.). Younes asserts, therefore, that ALJ Grabeel failed to apply correct principles of law, and that his Step 2 finding of severe impairments and his subsequent finding of residual functional capacity are fatally flawed.

Younes cites SSR 02-1p and cases listed in the note below[11] for the proposition that administrative law judges have a duty to discuss effects of obesity on individuals' abilities to perform basic work activities. Her brief also quotes SSR 02-1p to demonstrate potential limiting functional effects of obesity. (SSR 02-1p states that "*someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.*")

## D.   *Discussion*

ALJ Grabeel's failure to even mention obesity predictably spawned this action for judicial review. That conspicuous omission, however, does not

---

[11]    *Chavis v. Astrue*, No. 5:07-CV-0018 (LEK/VEB), 2010 WL 624039, at *10-11 (N.D.N.Y. Feb. 18, 2010); *Fox v. Astrue*, No. 6:05-CV-1599 (NAM/DRH), 2008 WL 828078, at *11 (N.D.N.Y. Mar. 26, 2008); *Hogan v. Astrue*, 491 F. Supp.2d 347, 355 (W.D.N.Y. 2007); *Cruz v. Barnhart*, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *9-10 (S.D.N.Y. May 8, 2006).

constitute reversible error *per se*. The fact that a particular factor or evidentiary item is not *mentioned* does not necessarily mean it was not *considered*.[12]

Cases cited by Younes are fact-specific, and do not establish an across-the-board requirement that Younes advocates. In *Chavis*, an obese patient's treating physician specifically referenced "weight reduction" as a measure to alleviate existing back pain. The court remanded the decision with instructions to clearly articulate findings linking the patient's limitations, if any, to obesity. In *Hogan*, obesity was found to be a severe impairment, but it was unclear whether obesity was considered subsequently at Steps 4 and 5 of sequential evaluation. Here, no medical source – treating or consultative – has found or suggested that obesity aggravates any of Younes's medically-determinable impairments or affects her ability to perform basic work activities. Hence, the factors warranting remands in *Chavis* and *Hogan* are absent.[13]

Clear weight of current authority contravenes Younes's argument. First, there is no hard and fast rule requiring administrative law judges to single out claimants' obesity for discussion in all cases.[14] Especially is that the case when, as here, the evidentiary record is devoid of evidence that medical sources consider obesity a significant factor relative to a claimant's ability to perform

---

[12]     *See Durakovic v. Colvin*, No. 3:12-CV-6 (FJS), 2014 WL 1293427, at *8 (N.D.N.Y. Mar. 31, 2014) (citing *Barringer v. Commissioner of Soc. Sec.*, 358 F. Supp.2d 67, 79 (N.D.N.Y. 2005) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("failure to cite specific evidence does not indicate that it was not considered."))); *accord Phelps v. Colvin*, 20 F. Supp.3d 392, 405 (W.D.N.Y. 2014).

[13]     The other cases cited by Younes, *Fox* and *Cruz*, are not analogous. In each, an administrative law judges specifically mentioned obesity in the decision. In each, the decision was affirmed over objection that obesity was not considered adequately.

[14]     *Ingianni v. Commissioner of Soc. Sec.*, No. 8:13-CV-13 (MAD/ATB), 2014 WL 1202624, at *7 (N.D.N.Y. Mar. 24, 2014); *Rushford-Spink v. Astrue*, No. 1:08-cv-827 (GLS/VEB), 2010 WL 396359, at *12 (N.D.N.Y. Jan. 25, 2010) (quoting *Yablonski v. Commissioner of Soc. Sec.*, 03-CV414 (FJS/RFT), 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008)); *Mancuso v. Astrue*, No. 1:06-CV-930 (GLS), 2008 WL 656679, at *5-6 (N.D.N.Y. Mar. 6, 2008), *aff'd*, 361 Fed. App'x 176, 178 (2d Cir. 2010); *Cruz v. Barnhart*, 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006).

basic work activities.[15]  Further, reviewing courts recognize that administrative law judges implicitly factor obesity into their decisions when they rely on medical reports that note claimants' obesity and provide overall assessments of work-related limitations.[16]

Here, no medical source identified Younes's obesity as a contributing factor to her impairments.  Thus, one is hard-pressed to envision what there was for ALJ Grabeel to discuss.  ALJ Grabeel relied on examining and reviewing consultative physicians' overall assessments of Younes's physical abilities. Examining physician, Dr. Puri, noted Younes's weight and characterized her as obese.  Dr. Hoffman reviewed Dr. Puri's report as well as references to obesity in Dr. Ianniello's treatment notes.  Both sources implicitly accounted for Younes's weight.

Younes did not claim obesity as a disabling impairment, and even in current briefing before the court Younes fails to identify any limitation occasioned by her obesity.[17]  Under these circumstances, ALJ Grabeel's failure to address explicitly Younes's obesity is not an error warranting remand.[18]

---

[15]    *Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011); *Rockwood v. Astrue*, 614 F. Supp.2d 252, 276 (N.D.N.Y. 2009) (NAM/VEB) (citing *Day v. Commissioner of Soc. Sec.*, 2008 WL 2331401, at *5 (N.D.N.Y. June 3, 2008) (FJS/GHL)).

[16]    *Drake v. Astrue*, 443 Fed. App'x 653, 657 (2d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *Paulino v. Astrue*, 08 Civ. 02813, 2010 WL 3001752, at *18-19 (S.D.N.Y. July 30, 2010).

[17]    Both treating physician Ianniello and examining physician Puri both noted that Younes was obese but in no acute distress. (T. 507, 646).

[18]    Younes's brief calculates her body mass index at 35.7, and concludes that she, therefore, is "considered obese."  Younes's obesity is not disputed, but it is worth noting that a body mass index score of 35.7 does not necessarily equate to a severe obesity impairment.  "There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment."  SSR 02-1p, 2000 WL 628049, at *4.  "As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* Here, no medical source found or opined that Younes's obesity is a significant factor relative to her ability to perform basic work activities. Moreover, a body mass index score of 35.7 is below Level III which represents the greatest risk of obesity-related impairments.

## VI. Weighting of Medical Opinion (Restated Points 2 and 3)

Younes's remaining arguments challenge ALJ Grabeel's weighting of medical opinion evidence.

As a threshold matter, it is appropriate to note that administrative law judges, when determining existence and severity of medically-determinable impairments, and also when assessing claimants' residual functional capacities, rely principally on medical source opinion. The Commissioner categorizes medical opinion evidence by "sources" described as "treating,"[19] "acceptable"[20] and "other."[21] Evidence from all three sources can be considered when determining severity of impairments and how they affect individuals' ability to function.[22]

---

[19] *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[20] "Acceptable" medical sources are licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources." 20 C.F.R. §§ 404.1502, 416.902. An acceptable medical source opinion or diagnosis is necessary to establish existence of a medically determinable impairment. SSR 06-03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).

[21] "Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2. Evidence from these sources "is evaluated on key issues such as impairment severity and functional effects." *Id.*, at *2-3. "Other" source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight presumptions. *Id.; see also* SSR 96-2p, TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188, at *1 (SSA July 2, 1996) (explaining controlling-weight factors). Nor can "other" source opinion be relied upon to establish existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2329939, at *2.

[22] *See* SSR 06-03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006) ("In addition to evidence from 'acceptable medical sources,' we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function").

A "treating physician rule" requires administrative law judges to give controlling weight to opinions of treating sources regarding the nature and severity of impairments when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."[23]

State agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Accordingly, their opinions can constitute substantial evidence. *See Russell v. Colvin*, No. 5:13–cv–1030 (MAD/CFH), 2015 WL 570828, at *12-13 (N.D.N.Y. Feb. 11, 2015). Consultative opinions can be afforded even greater weight than treating-source opinions when there is good reason to reject treating source opinion, and substantial evidence supports them. The Commissioner instructs:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96–6p, TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER

---

[23]    20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *1-2; *see also Morgan v. Colvin*, No. 14-991-cv, ___Fed. App'x___, 2015 WL 668818, at *1 (2d Cir. Feb. 18, 2015)(summary order); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

## A.   Evidence

Medical evidence at issue here[25] is summarized as follows:

Louis Ianniello, M.D. (treating primary care physician)

Dr. Ianniello, with Capital Care Medical Group, Family Practice Cushing Center, has been treating Younes since at least age 18.  (T. 642).  His progress notes reflect treatment for a variety of complaints, including asthma, gastrointestinal issues, abdominal pain, irritable bowel syndrome, nausea, diarrhea, herpes simplex, anxiety, and depression.  (T. 588, 589, 610, 611, 613, 615, 636, 638, 644, 646, 649, 655, 659, 661, 664, 666, 669, 670, 807).  Dr. Ianniello's progress notes are consistent with Younes's emergency room visits for the same complaints during the relevant time period.  (T. 226-36, 642, 806).  Dr. Ianniello, as her primary care physician, received copies of consultation reports from specialists evaluating her abdominal pain, diarrhea, nausea, and vomiting.  (T. 564-68, 897-98, 899-900, 901-02, 903-05).

Toula Georgiou, Psy.D. (psychiatric consultative examiner)

In November 2011, Dr. Georgiou conducted a mental status examination, noting that Younes was cooperative and her manner of relating was adequate;

---

[24]    *See also, e.g., Netter v. Astrue*, 272 Fed. App'x 54, 55–56 (2d Cir. 2008) (summary order); *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995).

[25]    In addition to medical evidence summarized **above**, ALJ Grabeel received a report of an internal medicine examination conducted by a state agency consultative examiner, Kautilya Puri, M.D.  Dr. Puri rendered a medical source opinion regarding Younes's physical limitations.  (T. 506-09).  No summary or further discussion of Dr. Puri's opinion is **needed because** Dr. Puri's opinion does not figure into errors Younes asserts.

her appearance was observed as disheveled, but well groomed; her speech was clear and expressive and receptive languages were adequate; her thought processes were coherent and goal directed; her mood was neutral; her attention and concentration was mildly impaired, but was able to do counting forward and back and simple calculations; her recent and remote memory skills were mildly impaired; her cognitive functioning was average; and her insight and judgment were fair. (T. 502-03). Dr. Georgiou diagnosed Younes with a mood disorder, personality disorder, and asthma. (T. 503). He gave her a "fair" prognosis. (T. 504). Dr. Georgiou provided the following medical source statement:

> She is able to follow and understand simple directions and instructions, perform simple tasks independently, attend and concentrate on simple tasks. She may have difficulty maintaining a regular schedule, having to perform some complex tasks at times, making vocational type decisions, relating with others in a vocational setting, and dealing with stress.
>
> Results of the present evaluation appear to be consistent with psychiatric difficulties that may significantly interfere with the claimant's ability to function on a daily basis.

(T. 503).

### L. Hoffman, Psychology (state agency reviewing psychologist)

In late-November, 2011, after reviewing Younes's longitudinal medical records, Dr. Hoffman completed a Psychiatric Review Technique form in which he rated Younes's functional limitations as mild in the area of activities of daily living; moderate in the areas of maintaining social functioning; and one or two in the area of repeated episodes of deterioration. (T. 520-21). Additionally, Dr. Hoffman completed a Mental Residual Functional Capacity Assessment, finding Younes "moderately" limited in 10 areas and "not significantly limited in the

remaining ten areas. (T. 525-26). Moreover, Dr. Hoffman provided summary conclusions in narrative form as follows:

> . . . [D]espite a severe impairment, clmt [*sic*] is viewed as able to understand and remember simple instructions, sustain attention and concentration for simple tasks, respond and relate adequately to others and adapt to simple changes.

(T. 527).

B. *ALJ Grabeel's Credibility Assessments*

When assessing Younes's residual functional capacity, ALJ Grabeel twice cited "Exhibit 16F" which contained primary care physician Dr. Ianniello's treatment notes. (T. 17). ALJ Grabeel did not mention Dr. Ianniello by name, however. Nor did he assign any quantum of weight to evidence from Dr. Ianniello.

ALJ Grabeel mentioned both Dr. Georgiou and Dr. Hoffman by name, and he also gave their opinions regarding Younes's mental capacity "greatest weight." He "adopted and incorporated by reference" Dr. Georgiou's opinion that Younes can "follow and understand simple directions and instructions, perform simple tasks independently, and attend and concentrate on simple tasks." (T. 18). He stated that he credited both Dr. Hoffman's and Dr. Georgiou's opinions because they were "the only acceptable medical sources to offer a detailed and precise opinion on the claimant's abilities and limitations, and provided specific work-related limitations." *Id.*

ALJ Grabeel, however, "accorded little value" to Dr. Georgiou's conjectural notations that Younes "may have difficulty maintaining a regular schedule, having to perform some complex tasks at times, making vocational type

decisions, relating with others in a vocational setting and dealing with stress." *Id.* The reasons given for rejecting this aspect of Dr. Georgiou's report was that "these limitations were based on a one-time examination, are not supported by other evidence of record and are not quantified." *Id.*

C.   *Younes's Challenge*

Younes contends ALJ Grabeel violated the treating physician rule by not mentioning Dr. Ianniello by name or providing his opinions controlling or any weight. Younes concedes that "Dr. Ianniello did not provide a medical source statements (*sic*) specifically outlining claimant's functional limitations," but argues that Dr. Ianniello's "copious medical records show a lengthy treating relationship with the claimant." (Dkt. No. 12, p. 4). Younes maintains that those records reflect numerous patient-reported complaints consistent with entries in medical records from other providers and treatment centers. Younes argues that ALJ Grabeel had a legal duty to provide good reasons "for not crediting the opinion of Ms. Younes's treating physician," and instead of doing so, "his decision ignores [Dr. Ianniello] completely." (*Id.*).

By *inference*, Younes argues in passing that it was error for ALJ Grabeel to afford "greatest weight" to opinions of the consultative examiner (Dr. Georgiou) and non-examining state agency medical reviewer (Dr. Hoffman). Younes *explicitly* argues, however that ALJ Grabeel's reasons for affording only "little value" to some portions of Dr. Georgiou's opinion are nonsensical.

D.   *Discussion*

1.   <u>Failure to Give Controlling Weight to Treating Physician</u>

Younes's argument that ALJ Grabeel violated the treating physician rule is based on a faulty premise that Dr. Ianniello expressed an opinion

presumptively entitled to controlling weight. The only evidence from Dr. Ianniello consists of treatment notes recording Younes's complaints and documenting prescribed medications and other treatments. Those notes do not contain a formal psychiatric review or results of mental-function diagnostic tests. Dr. Ianniello's findings or observations did not evaluate Younes's physical or mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. In short, they do not constitute a medical opinion presumptively entitled to controlling weight or susceptible to six-factor evaluation prescribed by regulation for weighing forensic medical source opinion.

Given this vacuity, ALJ Grabeel cannot be faulted for failing to give Dr. Ianniello's treatment notes controlling or any specific quantum of weight. Nor was it error for him to give "greatest weight" to opinions of the two state agency consultants who possessed greater degrees of specialization, were highly-qualified experts in Social Security disability evaluation, and were "the only acceptable medical sources to offer a detailed and precise opinion on the claimant's abilities and limitations and provided specific work-related limitations." (T. 18).

2. <u>Incongruous Weighting</u>

ALJ Grabeel afforded "greatest weight" to that portion of consultative-examining psychiatrist Dr. Georgiou's opinion which supported a finding that

Younes retains capacity to meet mental demands of unskilled work.[26]  He afforded "little value," however, to the portion of Dr. Georgiou's opinion indicating that Younes may have difficulty with maintaining a regular schedule, performing complex tasks, making vocational type decisions, relating with others in a vocational setting, and dealing with stress.  (T. 18).

Reviewing courts decry administrative "cherry picking" of relevant evidence.  This term refers to crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source.  *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ( "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").  "Cherry picking" can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.  *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010).

There is no absolute bar to crediting only portions of medical source opinions.  But, when doing so smacks of "cherry picking" of evidence supporting a finding while rejecting contrary evidence from the same source, an

---

[26]    These mental activities are generally required by competitive, remunerative, unskilled work:

- Understanding, remembering, and carrying out simple instructions.
- Making judgments that are commensurate with the functions of unskilled work--i.e., simple work- related decisions.
- Responding appropriately to supervision, co- workers and usual work situations.
- Dealing with changes in a routine work setting.

SSR 96-9p, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK-IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, 1996 WL 374185, at *9 (SSA July 2, 1996); *see also* SSR 85-15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK – THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *4 (SSA 1985).

administrative law judge must have a sound reason for weighting portions of the same-source opinions differently.

ALJ Grabeel's rationale for giving greatest weight to part of Dr. Georgiou's opinion and little value to the remainder was unsound. It was nonsensical to discredit part of Dr. Georgiou's opinion on the ground that it was "based on a one-time examination" while affording greatest weight to other portions also based on a one-time examination. (T. 18). It was patently unreasonable to infer that the rejected portion was contrary to "other evidence of record" when there was no other evidence of record (except for Dr. Hoffman's subsequent opinion based largely on Dr. Georgiou's report). And, for that matter, one might have said the same about the portion of Dr. Georgiou's opinion that was afforded greatest weight.

ALJ Grabeel thus committed a "cherry picking" error in the weighting of Dr. Georgiou's forensic opinions. Even so, a reviewing court may not reverse and remand the case if that error was harmless.[27] To make that determination, the court must determine whether the result would have been the same absent the error. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

Here, ALJ Grabeel's error in weighting Dr. Georgiou's opinions was harmless. Had ALJ entirely rejected Dr. Georgiou's opinions, there is no reason for the court to conclude ALJ Grabeel would have made a different decision.

---

[27]  Congressional mandates requiring courts to review administrative decrees in light of "the rule of prejudicial error" and to disregard all administrative errors and defects not affecting "substantial rights" refer to what modern jurisprudence calls "harmless error doctrine." *See Shinseki v. Sanders*, 556 U.S. 396, 406-08 (2009). Under this doctrine, a reviewing court must reverse and remand when an administrative law judge errs unless, as a matter of law, the result was not affected by the error. *See NLRB v. Enterprise Assoc.*, 429 U.S. 507, 522 n. 9 (1977).

Under the specific facts of this case, Dr. Hoffman's separate longitudinal review and opinion (that Younes, despite her severe mental impairment, is able to understand and remember simple instructions, sustain attention and concentration for simple tasks, respond and relate adequately to others, and adapt to simple changes) would constitute substantial evidence of residual functional mental capacity for unskilled work.

Conversely, if Dr. Georgiou's opinions were given "greatest weight" in their entirety (as Younes apparently advocates), there would have been no overarching reason mandating that ALJ Grabeel assess residual functional capacity differently. Dr. Georgiou opined only that Younes "may" have difficulties in performing some work activities and in dealing with stress. This ambivalent, conjectural and unspecific observation connotes only a possibility, not a reasonably-certain medical probability, that Younes has additional mental limitations. ALJ Grabeel would have acted within sound discretion in declining to include them in his residual functional capacity assessment.

Finally, ALJ Grabeel's residual functional capacity finding adequately factored in limitations in maintaining concentration, persistence and pace and difficulties dealing with stress. *See, e.g., Bartell v. Commissioner of Soc. Sec.*, No. 5:13–cv–843 (GLS/ESH), 2014 WL 4966149, at *3 (N.D.N.Y. Sept. 30, 2014) (citing cases holding that residual functional capacity assessments limiting claimants to simple unskilled work adequately account for moderate limitations in concentration, persistence, and pace as well as difficulties with stress).

## VII.  Recommendation

Taking into account the rule of prejudicial error, Younes's request to remand this action should be DENIED. The Commissioner's decision should be AFFIRMED.

## VIII.   Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___13___ day of ___March___ 2015.

Earl S. Hines
United States Magistrate Judge